IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEFFRY IAN COOK,

    Petitioner,               No. 2:06-cv-00869 ALA HC

    vs.

TOM CAREY, Warden, et al.,

    Respondent.          ORDER

_____/

      Pending before the Court are Jeffry Cook's ("Petitioner") application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a) (Doc. 1), Respondent's Answer (Doc. 8), and Petitioner's Reply (Doc. 12). Also before the Court are the parties' briefs filed in response to this Court's December 19, 2007 order requesting additional briefing on the applicability of *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007), to this matter. For the reasons discussed below, Petitioner's application is denied.

**I**

**A**

      Pursuant to a plea bargain agreement, Petitioner entered a guilty plea to one count of first degree murder in violation of the California Penal Code section 187. On motion of the District Attorney, the remaining two counts, which were violations of the California Health and Safety

1

PDF created with pdfFactory trial version www.pdffactory.com

Code, were dismissed in the interest of justice. Petitioner was sentenced on December 28, 1979, to serve a sentence of 25 years to life with the possibility of parole.

**B**

The probation report prepared for the trial court's sentencing proceedings described Petitioner's crime as follows:

> Criminal record:
> SUMMARY OF OFFENSE:
> This case involved the shooting death of Nevada State Undercover Narcotics Agent Ronald Chelius. The shooting occurred as Agent Chelius was completing a drug sale transaction of 1,000 tablets of Mescaline for a purchase price of $1,200.00. The agent was accompanied by a 17-year-old Carson City informant who initiated the contact with Joseph Roberts for the sale of the drugs. Joseph Roberts was accompanied by Jeffry Ian Cook who was charged with the shooting of the agent.
>
> Agent Chelius followed the pickup driven by Jeffry Cook to the parking lot area of the Vans Market . . . . In the parking lot, Agent Chelius parked his vehicle alongside and parallel to the Ford Courier. Agent Chelius . . . walked to the driver's side of the pickup truck. Sitting in the driver seat was Jeffry Cook. Agent Chelius counted out the $1,200.00 twice and handed the money to Cook. Cook, in return, handed Agent Chelius the 1,000 "hits" of LSD . . . . After a brief moment, Agent Chelius identified himself as a narcotics officer and advised the two subjects in the pickup truck that they were under arrest. The agent reached inside the vehicle and removed the keys from the ignition. A brief struggle ensued. A single gunshot was fired with the bullet striking Agent Chelius in the chest . . . . Agent Chelius was not armed at this time . . . . Agent Chelius was pronounced dead.

**II**

On August 11, 2004 ("2004 Decision"), the California Board of Prison Terms ("BPT") decided that Petitioner was unsuitable for release on parole. Petitioner challenged the parole denial in a state habeas corpus petition.

On February 1, 2005, the Sacramento County Superior Court denied Petitioner's petition for a writ of habeas corpus. The Superior Court concluded that Petitioner's claim that his continued incarceration violated the terms of his plea bargain failed to state a claim because, while Petitioner was sentenced to a term of 25 years to life, there were no guarantees that he would be

2

PDF created with pdfFactory trial version www.pdffactory.com

released after serving 25 years in prison.  Similarly, the Superior Court rejected Petitioner's argument that the District Attorney was prohibited by the plea bargain from attending his parole hearing since the Judgment and Sentencing transcript showed that no promises were made.  The Superior Court also concluded that the BPT's decision was supported by some evidence and rejected Petitioner's contention that the BPT erred in deciding that he was unsuitable for release on parole.  The Superior Court's order reads as follows:

> Petitioner is challenging the Board of Prison Terms' (BPT) most recent "failure" to set a parole date for him.  First, he contends that the BPT's refusal to set a parole date violates the terms of his plea bargain . . . .  For this same reason, petitioner contends that the District Attorney's presence at his parole consideration hearing was illegal.
> [P]etitioner contends that the BPT's decision denying him a parole date is illegal as the evidence did not support their decision.  Fourth, petitioner takes issue with the BPT's finding that he would pose an unreasonable risk of danger to society.
> Petitioner's claim that his continued incarceration violates the terms of his plea bargain fails to state a prima facie case for relief.  Although he was sentenced to a term of 25 years to life, there were no guarantees that he would be released after serving 25 years in prison.  Contrary to petitioner's belief . . . [the] transcript from his Judgment and Sentencing . . . does not reflect any promises that show otherwise . . . .  For these same reasons, his claim that the District Attorney was prohibited by the plea bargain from attending his parole consideration hearing fails, as well.
> Petitioner's claim that the evidence presented at the hearing does not support the BPT's also fails to satisfy the above requirements . . . .
> Petitioner's . . . claim, that the BPT improperly found that he would pose an unreasonable risk of danger to society, fails to state a prima facie case for relief.  Although Dr. Hoppe's psychological report is somewhat favorable of release, the BPT is not obligated to adopt the doctor's opinion.  Instead, "[t]he BPT's exercise of its broad discretion 'involves the deliberate assessment of a wide variety of individualized factors on a case-by-case basis, and the striking of a balance between the interests of the inmate and [of] the public.' (Citation omitted.)"  (*In re Powell* (1988) 45 Cal.3d 894.)  California courts have been unwilling to disturb a decision reached by the Board as long as there is "some evidence" to support the Board's decision.  (*In re Powell*, at 902.)  As petitioner has not stated any facts that might cast doubt on the validity of the Board's decision, petitioner's claim must fail.

Petitioner then appealed the Court's denial of his petition for a writ of habeas corpus in

3

PDF created with pdfFactory trial version www.pdffactory.com

the California Court of Appeal. That Court summarily denied Petitioner's request for relief on March 17, 2005.[1] The California Supreme Court also summarily denied Petitioner's petition for habeas corpus on January 25, 2006. Petitioner filed a timely application for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254(a) on April 24, 2006.

In determining whether the California courts erred in holding that Petitioner had failed to demonstrate that his federal constitutional rights have been violated, this Court must look to the Sacramento County Superior Court's decision as the last reasoned state court opinion addressing Petitioner's arguments. *See Franklin v. Johnson*, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002) (explaining that when a subsequent appeal is denied without comment, a federal court must look to the last state court decision that actually addresses a claim).

### III

### A

An application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "shall not be granted with respect to any claim that was adjudicated on the merits" in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### B

---

[1] "[T]he sole and proper remedy after denial of a petition for writ of habeas corpus by a superior court is to file a new petition with the Court of Appeal, which has original jurisdiction in habeas corpus matters." *In re Reed*, 33 Cal. 3d 914, 918 n.2 (1983), *overruled on other grounds in In re Alva*, 33 Cal. 4th 254, 264 (2004). "Further review may be sought in [the California Supreme Court] either by a new petition for habeas corpus or, preferably, by a petition for hearing." *Id.*

4

PDF created with pdfFactory trial version www.pdffactory.com

Petitioner alleged in his § 2254(a) application that "Petitioner's right to due process, pursuant to the Fifth and Fourteenth Amendments of the United States Constitution, was violated by the BPT in its continual use of Petitioner's commitment offense as its reason in finding him unsuitable for parole." Further, he argues that his right to due process was "violated by the BPT in its finding that Petitioner 'would pose an unreasonable risk of failure to society or a threat to public safety,' as there is no basis for its arbitrary and capricious finding."

Respondent maintains that a prisoner does not have a federally protected liberty interest in parole under California Penal Code section 3041. This contention is contrary to the Ninth Circuit's decision in *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1127-28 (9th Cir. 2006). This Court must reject Respondent's contention under compulsion of Ninth Circuit precedent that provides that "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *Id.* at 1127 (citation omitted).

**C**

In *Superintendent v. Hill*, 472 U.S. 445, 454 (1985), the Supreme Court held that "revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record." (Citation omitted). This Court is bound by the Ninth Circuit's holding that the "some evidence" standard announced in *Hill* applies to parole release proceedings. *Sass*, 461 F.3d at 1128-29.

"To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.'" *Id.* at 1128 (quoting *Hill*, 472 U.S. at 455-56). "*Hill*'s some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'" *Id.* at 1129 (quoting *Hill*, 472 U.S. at 457).

PDF created with pdfFactory trial version www.pdffactory.com

In *Irons v. Carey*, 505 F.3d 847, 853 (9th Cir. 2007) the Court held that

> where, as here, there is some evidence to support a finding that "the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering" and the "motive for the crime is inexplicable or very trivial in relation to the offense," Cal. Code Regs., tit. 15 § 2402(c)(1)(D)-(E), we cannot say that the state court unreasonably applied *Hill*'s "some evidence" principle.

In *Irons*, the record showed that the BPT relied on the commitment offense in determining that the prisoner was not suitable for release on parole. *Id.* at 852.

The Ninth Circuit limited its holding in *Irons* as follows: "All we held in [*Sass*, 461 F.3d at 1125 and *Biggs v. Terhune*, 334 F.3d 910, 912 (9th Cir. 2002)] and all we hold today, therefore, is that, given the particular circumstances of the offenses of these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms." *Irons*, 505 F.3d at 853-54. In an unusual comment in *Irons*, the panel expressed its aspiration that some future court decision will conclude that the BPT has the duty to grant parole where "there was substantial evidence in the record demonstrating rehabilitation." *Id.* at 854. The Court stated:

> We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes.

*Id.*

The *Irons* panel did not cite any authority to support its prognostication that the denial by the state court of habeas corpus relief, under such circumstances, would be "contrary to, or involve[] an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" in violation of 28 U.S.C. § 2254(d)(1). No presently binding Ninth Circuit decision has fulfilled the prediction of the *Irons*'s panel.

In the precedential portion of the *Irons* decision, the Court held that "we must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole,

6

PDF created with pdfFactory trial version www.pdffactory.com

and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence' constituted an unreasonable application of the 'some evidence' principle articulated in *Hill*." *Irons*, 505 F.3d at 851. Under California law, a prisoner is unsuitable for parole if:

> (1)  the prisoner committed the offense in an especially heinous, atrocious, or cruel manner;
> (2)  the prisoner has a previous record of violence;
> (3)  the prisoner has an unstable social history;
> (4)  the prisoner has committed sadistic sex offenses;
> (5)  the prisoner has a history of mental or psychological problems; and
> (6)  the prisoner has engaged in serious misconduct while in prison.

Cal. Code Regs., tit. 15 § 2402(c).

## IV

### A

In response to this Court's request for supplemental briefing, following the publication of the *Irons* decision, Petitioner argues that under *Irons* he has a liberty interest in parole that is protected by the Fourteenth Amendment's Due Process Clause. Second, Petitioner contends that because a determination that he is unsuitable for parole deprives him of this liberty interest, it must be supported by at least "some evidence."

In his supplemental brief, Respondent asserts that the "some evidence" standard set forth in *Irons* is not a proper basis for granting relief under AEDPA because it relies solely on circuit precedent, and is therefore not "clearly established Federal law, as determined by the Supreme Court of the United States."

As noted above, according to the Ninth Circuit's decision in *Sass*, the "some evidence" rule set forth in *Hill* governs parole denial claims. *Sass*, 461 F.3d at 1128-29. This Court must apply the law of this Circuit. *See Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987) (citation omitted) ("District courts are, of course, bound by the law of their own circuit and 'are not to resolve splits between circuits no matter how egregiously in error they may feel their own circuit to be.'"). Accordingly, this Court must determine whether "some evidence" supported BPT's

PDF created with pdfFactory trial version www.pdffactory.com

1  decisions in 2004 that Petitioner is not yet suitable for parole because he would "pose an

2  unreasonable risk of danger to society if released from prison." Code Regs., tit. 15 § 2402(c).

**B**

The BPT's 2004 decision reads as follows:

> Obviously, the commitment offense is the major factor in this case, and this was an offense that was . . . very callous and very dispassionate. It was certainly carried out in a manner that demonstrates a callous disregard for human suffering. And regardless of whether it was drugs or something else, in relation to this offense the motive was clearly trivial. It was a situation where another choice could have been made, and the choice was made instead to take this man's life . . . regardless of who he thought he was You had the gun. He didn't have the gun. He was certainly less able to be threatening to you than you were able to be threatening to him at that particular moment. So, certainly, the decision to shoot him instead of threaten him or find alternative solutions to the situation made it callous. The prisoner does have in his record historically an escalating pattern of criminal conduct. The pattern of conduct, as would . . . the unstable social history, is that he stared out . . . dropping out of high school, started using drugs, started selling drugs, and then committed a murder. And this is an escalating behavior. He has programmed well. He certainly used a lot of, probably most of what's been available to him while he's been incarcerated. He has had during his incarceration three 115s, the last one was just an administrative. The last serious 115 was back in 1991 for being under the influence. He has good parole plans. He has good family support. I would recommend that you . . . continue to look into those programs that you've been involved in . . . that are regarding . . . issues of drug abuse, alcohol use . . . the substance abuse problems that he has been involved with. The Hearing Panel notes that . . . the District Attorney of Sacramento County is represented today, and he . . . spoke of opposition to a finding of suitability at this time. We do, once again, want to commend you for what you've been doing. You're doing a good job. You're doing well and you presented yourself well today . . . . I want to note for the record that, once again, you finished vocational mill and cabinet and vocational painting, that you've had above-average work reports, you've been participating in NA and AA, and that you participated in the Laubach Tutoring Program. However, currently . . . the positive factors of behavior do not outweigh the factors of unsuitability . . . . [W]e didn't have the opportunity to . . . hear from him because we need to feel really confident that he gets and that when he gets a date we're not going to be seeing him again . . . . And we can't gain that confidence if we're not able to talk to him. And whether he wants to discuss the commitment offense or not, even if he just talks about other things, but for the most part, we didn't have an opportunity to really talk to him . . . . I wish that we

8

PDF created with pdfFactory trial version www.pdffactory.com

had more interaction with you during the hearing.

## C

Petitioner contends that the BPT's August 11, 2004 decision that he was unsuitable for release on parole violated his due process rights because the BPT relied on the unchangeable circumstances of Petitioner's commitment offense in making a determination of his unsuitability. He cites *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003) for the proposition that "denying [petitioner] a parole date simply because of the nature of the offense would raise serious questions involving his liberty interest." Pet'r Reply & Mem. of P. & A. at 11. He argues that denial of parole based on the commitment offense violates his due process rights. *Id.* at 12.

In fact, however, *Biggs* and *Irons* hold to the contrary. The Ninth Circuit *affirmed* the denial of a parole release in *Biggs* stating: "Section 3041(b) allows the gravity of the offense to be considered in requiring a period of longer incarceration. The murder of which *Biggs* was convicted involved killing a witness in a manner which exhibited a callous disregard for life." *Biggs,* 334 F.3d at 916.

In *Irons*, the Ninth Circuit held that this Court must look to California law to determine whether the BPT's decision that Petitioner was not eligible for release was supported by some evidence of one of the factors set forth in § 2402(c). The Ninth Circuit stated in *Irons* that a prisoner's commitment offense, on its own, may justify parole denial if "the Board can 'point to factors beyond the minimum elements of the crime for which the inmate was committed' that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released." *Id.* at 852 (quoting *Dannenberg*, 34 Cal. 4th 1061, 1071 (2005)). An offense committed in an especially heinous, atrocious or cruel manner is a factor tending to show unsuitability for release. Cal. Code. Regs., tit. 15 § 2402(c)(1). California Penal Code section 3041(b) provides that the BPT

> shall set a release date unless it determines the gravity of the offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety

9

PDF created with pdfFactory trial version www.pdffactory.com

>requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

California Code of Regulations §2281 sets forth the circumstances that tend to show unsuitability for parole release. Section 2281(c)(1) provides as follows:

>(1) Commitment Offense: The prisoner committed the offense in an especially heinous, atrocious or cruel manner.

The factors to be considered include:

>(A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>(C) The victim was abused, defiled or mutilated during or after the offense.
>(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

In its 2004 decision, the BPT expressly relied on the callous and dispassionate nature of the commitment offense and determined that it demonstrated great disregard for human suffering. Given that the situation surrounding the shooting involved the sale of drugs by Petitioner, the BPT reasoned that the motive of the crime was trivial. However, the BPT did not rely solely on that factor in finding that Petitioner posed an unreasonable risk of danger to society and a threat to public safety if he were released. It also expressed its concern with Petitioner's failure to speak or interact with the BPT at the hearing. In response, Petitioner stated that he spoke at his prior hearings and believed the Board would have a transcript of those prior hearings.

The record demonstrates that the BPT's finding that Petitioner's crime was carried out in an especially callous and dispassionate manner is supported by some evidence. When Agent Chelius identified himself as a narcotics officer and stated that Petitioner was under arrest, Petitioner immediately shot at the Agent. This immediate decision to shoot at an unarmed Agent made it particularly callous. Petitioner had many choices other than shooting an unarmed man. Furthermore, the motive to shoot was trivial.

10

PDF created with pdfFactory trial version www.pdffactory.com

1    The BPT also noted that prior to killing his victim, Petitioner had an escalating pattern of
2 criminal conduct and an unstable social history.  First, Petitioner dropped out of high school, then
3 began using drugs, then began selling drugs, and finally committed a murder.  The record shows
4 that the BPT considered the circumstances set forth in section 2281(d) that tend to show suitability
5 for parole release including that Petitioner had not been recently charged with a disciplinary
6 infraction and his progress in prison had improved.  The BPT also commended Petitioner for the
7 portions of his vocation program that he had completed.  Similarly, the BPT noted his participation
8 in NA, AA, and a tutoring program.  The BPT concluded, however, that "the positive aspects of
9 [his] behavior do not outweigh the factors of unsuitability."  "To determine whether the some
10 evidence standard is met 'does not require examination of the entire record, independent
11 assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant test is
12 whether there is any evidence in the record that could support the conclusion reached by the
13 disciplinary board.'"  *Sass*, 461 F.3d at 1128 (*quoting Hill,* 472 U.S. at 455-56).  "Hill's some
14 evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the
15 findings of the disciplinary board were without support or otherwise arbitrary.'"  *Id.* at 1129
16 (*quoting Hill,* 472 U.S. at 457).

17    The BPT decided not to set a release date because it considered that the callous and
18 dispassionate nature of Petitioner's crime continues to pose a risk of danger to society if he is set
19 free.  It also concluded that this finding outweighs the fact that he has performed well while
20 confined under twenty-four hour supervision by prison guards.  Thus, the BPT's decision is
21 supported by some evidence.

22    For the same reason, the decision of the Sacramento County Superior Court denying
23 Petitioner's state habeas corpus petition was not "contrary to, or involved an unreasonable
24 application of, clearly established federal law, as determined by the Supreme Court of the United
25 States."  28 U.S.C. § 2254(d).

26                                              **V**

11

PDF created with pdfFactory trial version www.pdffactory.com

Petitioner also presents two other claims. First, he contends that his right to due process was violated when the BPT refused to set a parole date and thus ignored the terms of the plea bargain. Petitioner concedes that he pled guilty to first degree murder with the understanding that he would serve a term of 25 years to life, but he argues that his continued incarceration has illegally exceeded the outer boundaries of his sentence. Second, Petitioner contends that his due process rights were violated when the BPT allowed a representative of the district attorney to attend Petitioner's parole consideration hearing. Petitioner argues that in doing so, the BPT acted illegally because the State's representative was barred under the California Penal Code section 3041.5.[2] Each claim will be analyzed in turn.

**A**

Petitioner's claim that his continued incarceration violates the terms of the plea bargain agreement fails. "Due process guarantees under the fifth amendment require that a defendant's guilty plea be voluntary and intelligent." *Torrey v. Estelle*, 842 F.2d 234, 235 (9th Cir. 1988). A guilty plea is voluntary if it is entered by a defendant fully aware of the plea's direct consequences, including the "'range of allowable punishment' that will result from his plea." *Id.* (citation omitted). "[A] defendant is entitled to be informed of the direct consequences of the plea," but not of all possible collateral consequences. *Id.* at 235. A consequence that rests in the hands of another government agency, "or in the hands of the defendant himself," is a collateral consequence. *Id.* at 236.

In cases involving eligibility for parole of offenders subject to indeterminate sentences, the time of potential parole eligibility is not a certain direct consequence of a guilty plea, but depends upon the defendant's conduct and is purely discretionary. *Carter v. McCarthy*, 806 F.2d 1373, 1375 (9th Cir. 1986). It is a collateral consequence whereby these indeterminate sentences may serve up to life in prison, but they become eligible for parole consideration after serving minimum

---

[2] Section 3041.5 provides for procedures at a parole hearing. This section has no reference to whether a representative of the District Attorney's Office can be present.

12

PDF created with pdfFactory trial version www.pdffactory.com

1 terms of confinement. Life inmates' actual confinement periods within the statutory range are
2 decided by the BPT which determines whether to fix a shorter term for imprisonment. *In re*
3 *Dannenberg*, 34 Cal. 4th 1061, 1078 (2005). Therefore, because Petitioner was sentenced to 25
4 years to life, any punishment up to life in prison comports with the plea agreement.
5      Petitioner also argues that:
6      
> Petitioner, on advice given him by the state appointed public defender, agreed to the plea agreement by the district attorney, as Petitioner was assured by his counsel that he would be paroled in 16 years and 8 months if Petitioner stayed out of trouble. Petitioner entered into this plea agreement as a guarantee to be paroled at a future date . . . . If Petitioner had been informed by his public defender that the district attorney would [argue] against Petitioner's release whenever he had a parole hearing, Petitioner would never have agreed to his current plea agreement.

Pet. at 9-10.

     Petitioner relies on *Santobello v. New York*, 404 U.S. 257 (1971) for the proposition that the State may not renege on its promise when the defendant's plea rested on it. Petitioner's reliance on *Santobello* is misplaced. He has not alleged that the District Attorney's Office made a promise that he would be released on parole. Petitioner's understanding that he would be paroled after serving 16 years and 8 months is not substantiated by any evidence that shows that the District Attorney's Office made any such promise.

     "Under California law, the intent of the parties determines the meaning of the contract. Cal. Civ. Code §§ 1636, 1638. The relevant intent is 'objective' - that is, the intent manifested in the agreement and by surrounding conduct-rather than the subjective beliefs of the parties." *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992); *see also*, *Union Bank v. Winnebago Indus.*, 528 F.2d 95, 99 (9th Cir. 1975) (holding that a "prior unilateral" understanding is "foreclosed because the subjective, unexpressed and uncommunicated thoughts of a party are irrelevant to the material issue of the parties' intent"). There was no commitment made by the prosecutor that Petitioner would be released at a specialized time, nor did the prosecutor promise not to oppose parole release. Petitioner's unilateral, subjective

13

PDF created with pdfFactory trial version www.pdffactory.com

understanding otherwise does not change the terms of the plea agreement.  *See, e.g., United States v. Clark*, 781 F.2d 730, 731-33 (9th Cir. 1986) (holding that a plea agreement violation claim depends upon the actual terms of the agreement as determined by objective standards and not the subjective understanding of the defendant or deficient advice provided by his attorney).

Moreover, the Transcript of Judgment and Sentence reveals the following colloquy:

> THE COURT:    It is the judgment and sentence of this Court that for the crime of murder of the first degree as contained in Count One of the amended information that the defendant be imprisoned in the State Prison of the State of California for the term prescribed by law.
> That, as the Court now understands it, is 25 years to life.
> I would also indicate at this point that it is now the duty of the Court to inform the defendant that as part of this judgment and sentence that he may be released on parole after expiration of the terms of imprisonment just imposed unless the Community Release Board waives parole for good cause.
> Have you understand what I have said Mr. Cook?
>
> THE DEFENDANT:    Yes, sir.

Pet. Ex. C at 10.

No promise or representation regarding parole release date may be inferred from the Transcript of Judgment and Sentence here.  While Petitioner contends that he did not agree to a sentence of life without the possibility of parole, the possibility of parole does not mean a guarantee of parole.  Under state law, the inmate must be found suitable before his term and release date are set.  Petitioner received the parole considerations to which he is entitled under his agreement and sentence.

Accordingly, the District Attorney's Office did not violate Petitioner's right to due process. Therefore, the decision of the state courts rejecting Petitioner's claim in this regard is not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

**B**

Petitioner claims that his due process rights were violated when the BPT allowed a representative of the District Attorney's Office to be present at Petitioner's parole hearing.

PDF created with pdfFactory trial version www.pdffactory.com

Petitioner argues that in doing so, the BPT acted in violation of the California Penal Code section 3041.5. However, it is well established that "federal habeas corpus relief does not lie for errors of state law," even if such are present. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 67-68. Because Petitioner's claim involves the interpretation of a California statute, it is solely a question of state law, which this Court cannot reach on a habeas petition.

Therefore, it is hereby ORDERED that Petitioner's application for habeas corpus relief is DENIED.

/////

DATED: June 20, 2008

/s/ Arthur L. Alarcón
_____
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

15

PDF created with pdfFactory trial version www.pdffactory.com